BROWNING *v.* THE STATE, 30 Miss. Rep., 656.

### CONSPIRACY AND HOMICIDE.

On change of *venue* in a criminal case, the clerk should send a transcript of the indictment and record to the court which is to try the cause, and not the original papers.

Before the statements of co-defendants can be given in evidence against each other respectively, there must be a *prima facie* case established by evidence *aliunde.* 1 Greenl. Ev., 111; 2 Stark. Ev., 327; Wharton's Am. Cr. Law, *passim.*

If the combination for illegal purposes be once established, then the acts and

words of every person party to such combination, and in furtherance of the common design, is the act of all, and all are alike responsible.

Reasonable doubt is not probability only, or conjecture or supposition; the doubt which should induce a jury to withhold a verdict of guilty should be such a doubt as would reasonably arise from the testimony before them.

Error to Holmes circuit court.  HENRY, J.

John D. Browning and Gaston E. Browning were indicted in the circuit court of Sunflower county for the murder of one John W. Neal.  Upon application of the prisoners the *venue* was changed to the county of Holmes.  At the November term of the court below, the court having allowed the defendants to sever in the trial, Gaston E. Browning was tried and found guilty of murder.  He moved in arrest of judgment, and for a new trial, which motion was overruled, and the court thereupon pronounced sentence of death upon him.  The ground upon which the motion in arrest of judgment was made will be seen in the opinion of the court.  Numerous exceptions were taken to the proceedings, and the plaintiff sued out this writ of error.

The testimony was entirely circumstantial, and is very voluminous.  The only facts necessary to be stated are as follows, to wit:

That on Sunday evening, the 23d day of July,. 1854, the deceased, John W. Neal, left the plantation of his. employer, James Y. McNeil, between twelve o'clock M. and one o'clock P.M., with the avowed intention of crossing the Yazoo river, at John D. Browning's, and going to a Mr. Pool's and returning home that night, a distance of about eighteen miles in going and returning.  He was not seen afterwards by any of the witnesses until on the Tuesday evening following, being the 25th of July, when his dead body was discovered floating down the Yazoo river.

John D. Browning was present when the body was discovered; and a witness was permitted to relate the acts and declarations of John D. Browning, then performed and made, and which tended to implicate him in the murder of Neal.  John D. Browning was a justice of the peace, and, as such, officiated the next day as coroner, in holding an inquest over the body of Neal, and his conduct and declarations on that occasion were admitted in evidence against the prisoner.

On Tuesday, the 25th day of July, previous to the discovery of the body of Neal, John D. Browning and the prisoner, and a third party, searched the river for it, and John D. Browning's conduct and declarations at that time were also admitted in evidence.   After the arrest of John D. Browning and prisoner, the conduct and declarations of John D. Browning during the pendency of his trial before the committing court were also admitted in evidence; so were declarations made by him about three weeks before the death of Neal.   These declarations were not direct confessions of guilt, but were intended to show a knowledge of the circumstances of the murder, inconsistent with innocence, and also to show a motive.

There was no proof of a conspiracy or combination between the prisoner and John D. Browning to murder Neal.   The prisoner was the son of John D. Browning, and lived at his house at the time of Neal's death.

The ninth instruction, alluded to and commented on by the court, is as follows :

"Whenever the probability of guilt is of a definite and limited nature, whether in the proportion of one hundred to one, or one thousand to one, or in any other limited ratio, it can not safely be made the ground of conviction."

*Thos. Botters* and *J. Z. George* for plaintiff in error.

1. The court erred in forcing the prisoner to trial on a copy of the indictment.   He was entitled to be tried on the original. The law authorizing a change of *venue* in civil cases, directs that the original papers shall be transmitted.   Hutch. Code, 849. This act was passed in 1823.   The act afterwards passed in 1831, authorizing a change of *venue* in criminal cases, makes no provision as to the mode in which it shall be done.   It does not direct what shall or shall not be transmitted to the court into which the cause is removed.   This omission can not be accounted for, except upon the ground that the mode provided in the act in civil cases was intended to be pursued in criminal trials.

2. The court erred in permitting the conduct and declarations of John D. Browning to be detailed in evidence against the prisoner.   It is impossible to conceive upon what principle these declarations were admitted.   The fact that they were jointly

indicted will not authorize their admission. See 2 Stark. Ev.,
329; Wharton Am. Cr. Law, 326. The rule on this subject
seems to us to be so well understood and so well defined that it
is impossible to mistake it. Before the acts and declarations of
one can be admitted in evidence against another, the following
conditions must be complied with : First, that there was a con-
spiracy or combination existing between them for the commis-
sion of the crime charged ; Second, that the acts and declara-
tions were done and made in pursuance of the criminal enter-
prise, and in furtherance of its object; and Third, that these
should have been done and made in point of time subsequent
to the formation of the conspiracy, and previous to its comple-
tion or abandonment; or, in other words, *pending* the crimi-
nal enterprise. See 1 Greenl. Ev., § 98, 111, 233 ; 3 ib., 94;
Rosc. Crim. Ev., 76, 77, 78, 79 ; Breese R., 268 ; 2 Burr's Trial,
338, 339 ; 7 Grat. R. 641.

None of these conditions were complied with. In the first
place, there was not a single iota of proof that there was a crim-
inal combination between the Brownings to murder Neal.
There is no evidence tending to show this fact, unless it be the
declarations of John D. Browning. These were incompetent to
show this fact, for the reason that they could not be admitted at
all until after, and upon the condition the conspiracy was proven.
Upon the second point, the acts and declarations were inadmis-
sible as not having been done and made in pursuance of the
original concerted plan to murder Neal, (admitting it to be
proven). Not all the acts and declarations of a conspirator are
admissible against his associates, even when made pending the
criminal enterprise. The rule is restricted to the admission of.
those acts and declarations done in pursuance of the concerted
scheme and in furtherance of its object. What one might say or
do, although criminal in itself, yet, if it be outside of the conspi-
racy, it is not admissible against the others.

But, upon the third point, the reason for the exclusion of the
evidence is, if possible, more obvious than in the others. All
the acts and declarations of John D. Browning, which were ad-
mitted in evidence, were done and made after the death of Neal;
except one conversation which took place about three weeks pre-

viously. Some of them occurred even after their arrest. They can not possibly be said to have been made and done during the pendency of the criminal enterprise to murder Neal, for this had been accomplished by his death. See 1 Greenl., §. 111, and authorities above cited.

3. The court evidently erred in granting the third instruction asked for the state. It is substantially copied from the syllabus in Cicely's case. The syllabus substitutes the word "probability" for "possibility," as contained in the court's opinion. It may be true that a *possibility* of the prisoner's innocence may exist, there being a reasonable doubt of his guilt; but, to say that there is a *probability* of his innocence, and yet no reasonable doubt of his guilt, is manifestly absurd. If authority be used on this point, let Webster's Dictionary decide the matter. This instruction was prejudical to the prisoner; under it, he was utterly excluded from the benefit of a reasonable doubt.

4. The court erred in refusing the ninth instruction asked for by defendant. This, as a proposition of law, is undeniable, and is copied from the most learned and philosophical law-writer known to the profession (1 Stark. Ev. 574); besides, it announces a vital principle in the application of circumstantial evidence, and one recognized by this court in Algheri's case, 3 Cush., 389. By that case, the doctrine is distinctly asserted that, if the evidence only raises a definite and finite probability in favor of the hypothesis of guilt, it is insufficient. The probabilities in favor of guilt must be indefinite and beyond all human calculation; otherwise it is insufficient. This is all that is announced in the instruction; and the refusal to give it is equivalent to charging the reverse of it to be law.

5. The court erred in refusing to grant a new trial. On this point, counsel reviewed the evidence, but it is unnecessary to set out their argument, inasmuch as the court expressed no opinion on that point.

*D. C. Glenn,* attorney general.

1. Upon the testimony, this case presents a clearer case of guilt than the case of Cicely or the case of McCann. In fact, the conclusion of guilt is irresistible.

2. The admission of the evidence of John D. Browning was

justified by well-established principles, as proof of *facts* in the cause, and not as evidence of themselves to fix guilt on Gaston Browning—as indicatory evidence tending to prove the main fact in issue.  The authorities relied on are McCann's case, 13 S. & M., 471, and cases cited, which was maturely weighed and deliberately decided by the whole court.  This was not hearsay evidence.  On each point, I rely on 1 Greenl. § 100, 108 ; 1 Stark., § 563, 567 ; Keithler's case, 10 S. & M., 226, 47, 54, 55, 56, 57, 58, 59, and note ; also, 62, 63, 64, 65.

3. The charge refused was calculated to confuse and mislead the jury, and moreover, it propounds a rule of numerical and mathematical expression to be applied to moral probabilities, which is not safe, nor is it sanctioned by authority.  6 Wills, Cir. Ev. ; 1 Stark., close of volume.

SMITH, C. J. :

John D. Browning and Gaston E. Browning were jointly indicted in the circuit court of Sunflower county for the murder of John Neal.  Upon the application of counsel of prisoners, the venue was changed to Holmes County, in which the trial took place.  The parties charged were tried separately ; and, Gaston E. Browning, whose case is now before us, was convicted of murder and sentenced accordingly.

After the verdict, the prisoner moved in arrest of judgment. His motion being overruled, he moved for a new trial ; which, being also refused, exception was taken to the judgment on the motion for a new trial, and the evidence embodied in the bill of exceptions.

The objections now urged apply to various proceedings of the circuit court.

1. It is insisted that the court erred in overruling the motion in arrest of judgment.

A certified transcript " of all the orders, records, and papers, including the indictment," in conformity with the order changing the venue, was deposited with the clerk of the circuit court of Holmes County.  When the prisoner was about to be put upon his trial, he demanded the production of the original indictment found by the grand jurors of Sunflower county, and ob-

jected to being tried on the copy contained in the transcript. The objection was overruled, and the trial was proceeded with. This was the ground relied on in support of the motion.

The propriety of this action of the court, depends exclusively upon the construction to be given to the statute, in regard to the change of venue in criminal cases.

The statute on this subject, (Hutch. Dig., 1007, art. 63,) is entirely silent as to the mode in which an order for a change of venue in prosecutions shall be carried into effect. It provides simply that it shall and may be lawful under a prescribed state of circumstances, for any circuit or criminal court, to grant an order for the change of venue. The act in reference to a change of venue in civil cases, directs that the original papers shall be transmitted to the court into which the cause, by the order changing the venue, has been removed,—which are to be accompanied by a descriptive list of those papers. But we cannot hold, in the absence of any intimation by the legislature to that effect, that these directions are to be applied to criminal cases in which the venue has been changed, without authority for that purpose. If not conferred by the legislature, it would clearly be illegal, for the clerks of the circuit courts to part with the original papers or records pertaining to a prosecution therein pending. All that a clerk could do in such cases—and we must infer that it was all the legislature intended to be done—is to transmit to the clerk of the court, into which the cause has been removed, a perfect transcript of all the original papers in the cause, and of the minutes, or records of the court, containing the orders and proceedings of the court in relation to the same, properly certified under the seal of his office.[1]

In Green's case, (not yet reported,) there was a change of

[1] The Revised Code of 1857, provides that " Upon the order being made, changing the *venue* in a criminal case, the clerk shall make out a transcript of the caption of the record, also of the proceedings empanelling the grand jury, of the indictment, with the entries or endorsements thereon, and all entries relative thereto in the records of his office, the bonds, obligations and recognizances of the defendants, and all witnesses and all orders, judgments, or other papers or proceedings belonging to or had in said cause; and attach his certificate thereto, under his hand, with the seal of his court annexed, and forward it, sealed up, by a special messenger, or deliver it himself, together with all the original subpœnas in such case to the clerk of the circuit court, to which the trial is ordered to be removed. Rev. Code, 621, art. 299. See also, ib., 621, arts. 300, 301.

venue; and he was, as in the case at bar, tried upon a certified transcript of the indictment. The exception based upon that fact, was not noticed in the opinion of this court affirming the judgment; but, on a petition for re-argument, the question was maturely considered; and it was held to be no ground for reversing the judgment. Our subsequent examination of the subject, has confirmed our conviction of the correctness of the decision then made.

2. It is next objected, that the court erred, on numerous occasions, in the admission of evidence adduced in support of the prosecution.

The cases, or instances, in which it is alleged there was an erroneous admission of testimony in behalf of the state, are very numerous; and it is deemed unnecessary to notice them in detail, as we can fully understand the questions presented by the exceptions to the various items of testimony by a statement of the general character of the evidence excepted to, and the grounds of objection.

The Brownings—father and son—were jointly indicted for the murder of John Neal. They were tried separately; and the younger Browning was first put on his trial. During the examination of the witnesses, many persons called for the prosecution were permitted to testify as to the conduct and acts, occuring after the death of Neal, of the elder Browning; as to statements made by him after the perpetration of the alleged homicide; and in relation to conversations, in which he detailed facts which had happened long anterior to the date of the offense, as well as facts occurring after the deed was perpetrated. All of this testimony was objected to by the prisoner, as incompetent evidence, on the trial of the issue before the jury.

Two positions are assumed in support of the exception to the admission of this testimony.

1. It is assumed, that the testimony referred to was illegally admitted, because, as it is insisted, no proof whatever was offered tending to establish a conspiracy or combination between the plaintiff in error and the elder Browning.

It is not to be questioned, that the mere fact that these parties were jointly indicted for the murder of Neal, would not make

the declarations or acts of Browning the elder, evidence in the cause.   The principle upon which they could alone be admitted as evidence is, that the act or declaration of one, is that of both united in one common design ; a principle which is wholly unaffected by the consideration of their being jointly indicted.   2 Stark. Ev., 329.

The act or declaration of one wrong doer, is no evidence to affect any other person; for it is merely *res inter alios acta ;* unless where it is proved that several persons have entered into the same criminal design ; in such case the acts or declarations of any one of them, in furtherance of the common object, are not to be considered *res inter alios*, with regard to the rest of them ; they are all identified with each other in the prosecution of the scheme ; "they are partners," says Starkie, "for a bad purpose, and as much mutually responsible, as to such purpose, as partners in trade are for more honest pursuits; they may be considered as mutual agents for each other."

The existence of a conspiracy, or of a combination for the commission of a crime, is a fact, which, like all other facts, when it is material to be proved, can only be established by competent evidence.   The declaration of a stranger in regard to it would be mere hearsay ; unsustained by any of the legal tests of truth. The mere assertions of a stranger, that a conspiracy existed amongst others, to which he was not a party, would be clearly inadmissible, and it is equally clear, that the confession of the party making the assertion, that he was a party to the conspiracy, would not make the assertion evidence against strangers.

Hence, although in cases in which crime has been jointly committed by several persons, when once a conspiracy or combination has been established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise, is considered the act or declaration of all, and is evidence against all ; a foundation must first be laid by proof, sufficient in the opinion of the court to establish *prima facie*, the existence of the combination, or to be laid before the jury, as tending to establish such fact, before the acts or declarations of any of the conspirators or accomplices can be given in evidence to charge the

others.    This, as the general rule, seems to be universally recognized.[1]

Greenl. Ev., § 111; 2 Stark. Ev., 327; Whart. Am. Cr. L., 261, 262; and cases cited by the respective authors.

Tested by this rule, it is manifest that the court erred in admitting the acts and declarations of the elder Browning, as evidence in the cause; there having been no foundation laid by proof, establishing or tending to establish the existence of a concert or combination between him and the party on trial.

But an exception to the rule above laid down, confessedly, at least in its application, of not very ancient date, is recognized by the English courts.

Starkie says: The rule that one man is not to be affected by the acts or declaration of a stranger, rests on the principles of the purest justice; and although the courts, in cases of conspiracy, have, out of convenience, and on account of the difficulty in otherwise proving the guilt of the parties, admitted the acts and declarations of strangers to be given in evidence, in order to establish the fact of a conspiracy, it is to be remembered that this is an inversion of the usual order for the sake of convenience; and that such evidence is, in the result, material so far only as to the assent of the accused, to what has been done by others, is proved.    2 Stark. Ev., 329.

This exception, with some modification, has been sanctioned by Greenleaf in his work on Evidence.   He lays it down that sometimes, for the sake of convenience, under peculiar and urgent circumstances, the acts or declarations of one of a company of conspirators are admitted in evidence before sufficient proof is given of the conspiracy; the prosecutor undertaking to furnish such proof in a subsequent stage of the cause.   1 Greenl.

[1] Rex v. Watson, 32 How. St. Tr., 7; Rex v. Brandreth, ib., 857, 858; Rex v. Hardy, 24 Howell's St. Tr., 451, 452, 453, 475; American Fur Co. v. U. S., 2 Peters, 358, 365; Crowninshield's case, 10 Pick., 497; Rex v. Hunt, 3 B. & Ald., 566; 1 East P. C. 97, § 38; 1 Greenl. Ev., 111; Wharton Am. Cr. Law, 702 *et seq.;* Clawson v. State, 14 Ohio St. R., 234; 1 East P. C., c. 2, § 37, p. 96; 1 Phill. Ev., 447, citing the Queen's case, 2 Brod. & B., 302; 2 Russ. on Cr., 697; State v. George, 7 Iredell, 321; Clayton v. Anthony, 6 Randolph, 285; U. S. v. Cole, 5 McLean C. C. R., 513; State v. Nash, 7 Iowa, 347; Commonwealth v. Brown, 14 Gray, 419; State v. Ross, 19 Mo., 32; State v. Taylor, 3 Brevard, 243; Commonwealth v. Boot, Thacher's C. C., 390; Archbold Cr. Pr. & Pl., 620; The Queen's case, 2 Brod. & B., 302; Rex v. Hammond & Webb, 2 Esp., 719; Rex v. Stone, 6 Vern., 527.

Ev., 127. This rests in the discretion of the judge; and he adds, "that care must be taken that the acts and declarations thus admitted, be those only made and done during the pendency of the criminal enterprise, and in furtherance of its objects."

It is difficult to reconcile this exception to the rule, with the universally admitted principles of the law of evidence, or with the great object of all laws regulating the examination of witnesses and the introduction of evidence, which is to secure a fair and impartial trial of the question at issue. But conceding that the exigencies of the public required the recognition of this principle, and that it will be observed by this court; let us see whether under it the action of the circuit court can be justified.

The offense charged, if committed at all, was unseen by all, save by the parties engaged in its perpetration. The whole transaction was shrouded in secrecy. The very fact of the homicide, as well as the question who were the perpetrators of the deed, depended entirely upon indirect or circumstantial evidence. The charge, as laid in the indictment, presupposes the co-operation of at least two persons in the commission of the offense. It may hence well be conceded, that peculiar and urgent circumstances existed in the cause, which authorized the application of the exception to the rule above stated, if any combination of circumstances could authorize a departure from the prescribed mode. But it should ever be borne in mind, that no man can be asserted to be legally guilty of an offense, unless his guilt shall have been established according to the forms and principles of the law; and that in no case should a disregard of either the law itself or its established forms be tolerated from any considerations of difficulty in the conviction of offenders, or from the supposed manifest guilt of the accused.

According to some adjudged cases, very slight evidence of the existence of a conspiracy or combination in which the accused is implicated, is sufficient to let in proof of the acts and declarations of his accomplices, done or made pending the conspiracy, and in furtherance of its objects. In the case at bar, judging from the record, no attempt whatever seems to have been made by the prosecution to prove the existence of any concert or com-

bination between any persons in the perpetration of the alleged offense. In fact, no evidence had been offered to prove a *corpus delicti* before the first witness called for the prosecution was allowed to testify in regard to the acts and declarations of the elder Browning. It does not appear that any reason or cause was assigned for the admission of this evidence before a proper foundation was laid. Indeed, for aught that appears of record, the acts and declarations of the elder Browning were received and treated as original evidence in the cause, competent and pertinent to the issue to be tried. Every presumption, however, is in favor of the legality of the proceedings of courts. We are bound, therefore, to presume, in the absence of any thing to the contrary appearing of record, that testimony in relation to those acts and delarations, was admitted by the judge in the exercise of a wise discretion; and that in allowing it to go to the jury, the conditions of the law were strictly complied with.[1]

But there is an insurmountable objection to the admission of the testimony of many of the witnesses for the prosecution, in relation to certain acts and declarations of the elder Browning. As this objection would apply at all stages of the cause, and be equally tenable, if there had been proof *aliunde* connecting the plaintiff in error with a conspiracy for the murder of Neal, it will be considered in reference to the second ground taken in support of the exception to the admission of evidence.

2. It is insisted that the court erred in overruling the prisoner's objection to the testimony of certain witnesses for the prosecution, who were allowed to depose as to the acts and declarations of the elder Browning, not done or made pending the existence of a combination for the murder of Neal, and in furtherance of such object, but which occurred after the commission of the offense. The objection applies to portions of the testimony of many of the witnesses who were examined on the trial.

It is not our purpose to determine whether, upon all the evidence as submitted to the jury, the plaintiff in error was guilty

[1] Wharton Am. Cr. Law, 713; Co. Litt., 232; Van Omeron v. Dowick, 2 Camp., 44; Doe v. Evans, 1 Cr. & M., 461; 2 Russ. on Cr., 732; Reed v. Jackson, 1 East, 325; Sutton v. Johnstone, 1 T. R., 503; Lyttleton v. Cross, 3 B. & C., 327; 1 Greenl. Ev., 19; Broom's Legal Maxims, 907; U. S. v. Dandridge, 12 Wheaton, 69, 70; Davies v. Pratt, 17 C. B., 183 (E. C. L. R., 84); Regina v. Brennan, 16 L. J. Q. B., 289.

of the crime charged; but it will not be controverted that without the evidence in reference to the acts and declarations of Browning, the elder, there is not proof sufficient to connect him with the murder. The proofs, therefore, derived from the conduct and statements of the former, and which, in the estimation of the jury, were conclusive of the prisoner's guilty connection with the transaction, were important and material.

We have above stated the ground upon which the acts or declarations of one conspirator or one accomplice—where a crime has been committed by several persons—are admitted in evidence, to charge the others; and the rule in reference to the question under consideration, is too well settled to admit of doubt.

"It is an established rule," says Phillips, "that where several persons are proved to have combined together for the same illegal purpose, any act done by one of the party in pursuance of the original concerted plan, and with reference to the common object, is, in the contemplation of the law, the act of the whole party. It follows, that any writings, or verbal expressions, being acts in themselves, or accompanying and explaining other acts, and therefore part of the *res gestæ*, and which are brought home to one conspirator, are evidence against the other conspirators; provided it sufficiently appear that they were used in furtherance of a common design." 1 Phill. Ev., 200.[1]

And further: "But where words or writings are not acts in themselves, nor part of the *res gestæ*, but a mere relation of some part of the transaction, or as to the share which other persons have had in the execution of a common design, the evidence is not in its nature original. It depends on the credit of the narrator, who is not before the court; and therefore it can not be received."[2]   Id., 208.

[1] See also Wharton Am. Cr. Law, 702; U. S. v. Hinman, 1 Baldwin, 292; Martin v. Commonwealth, 11 Leigh, 745; U. S. v. Goodwin, 12 Wheaton, 469; Glory v. State, 8 Eng., 236; Stewart v. State, 26 Ala., 44; Cornelius v. Commonwealth, 15 B. Monroe, 539; Waterbury v. Sturtevant, 18 Wend., 353; State v. Poll, 1 Hawks, 442; State v. George, 7 Iredell, 321; State v. Loper, 4 Shep., 293; Malone v. State, 8 Ga., 408; 1 Greenl. Ev., 111; Rex v. Watson, 32 Howell's St. Tr., 7; Rex v. Brandreth, ib., 857, 858; Rex v. Hardy, 24 ib., 451, 452, 453, 475; American Fur Co. v. U. S., 2 Peters, 358, 365; Crowninshield's case, 10 Pick., 497; Rex v. Hunt, 3 B. & Ald., 566; 1 East P. C., 97, § 38; Nichols v. Dowding, 1 Stark. R., 81.

[2] 1 Greenl. Ev., 111; Rex v. Hardy, 24 Howell's St. Tr., 703, per Eyre, C. J.; Rex

Acts performed, or declarations made, after the consumma-
tion of the object for which the parties combined, can, upon no
principle, be considered a part of the *res gestæ;* much less can
an act done, or a declaration made, after the execution of a com-
mon design, be regarded as performed or made in the prosecu-
tion of such design.   The boundary between those acts and de-
clarations of conspirators and accomplices, which are admissible
in evidence, and those which are not, is as clearly defined as the
rule itself, upon which, in any case, they are admitted.   Green-
leaf, in terms, lays it down, that the evidence in respect to the
acts and declarations of conspirators and accomplices, must be
confined to acts and declarations made or done " during the
pendency of the criminal enterprise, and in furtherance of its
objects ;" and that, " after the enterprise is at an end, whether
by accomplishment or abandonment, is not material; no one is
permitted, by any subsequent act or declaration of his own, to
affect others.   His confession, therefore, subsequently made,
even though by the plea of guilty, is not admissible in evidence,
as such against any but himself."   1 Greenl. Ev., 127, § 111 ;
ib., 280, § 233.   The same rule is recognized by the approved
writers on the law of evidence.   Roscoe Cr. Ev., 80 ; 2 Stark.
Ev., 326 ; Am. Cr. Law, 161, 162.

Let it be assumed, then, that there was sufficient evidence to
establish the common guilt of the prisoner and the elder Brown-
ing ; and, hence, that the prisoner was properly chargeable by
the acts and declarations of the latter, done pending the com-
bination and in the prosecution of its objects ; but, tried by this
rule, it is manifest that the court erred, in several instances, in
the admission of testimony in relation to the acts and declarations
of the elder Browning.   Many of these acts and declarations,
deposed to by the witnesses, were done and made after the per-
petration of the alleged offense.   In some instances, statements
of the elder Browning, made even after he was placed under
arrest, were allowed to be detailed to the jury.   This was a pal-
pable violation of a rule of evidence, founded upon the purest
justice and the plainest principles of reason.

v. Salter, 5 Esp., 125 ; Rex v. Cope, 1 Stark., 144; Cuyler v. McCartney, 33 Barb.,
165; 2 Starkie Ev. (2d ed.), 236 ; Roscoe Cr. Ev., 386 ; 2 Russell on Cr., 697; Rex v.
Murphy, cited in Roscoe Cr. Ev., 386.

3. It is insisted, further, that there was error in granting the third charge requested in behalf of the prosecution. The instruction is in the following words : "A reasonable doubt, authorizing an acquittal, must arise from the testimony ; and if the jury are satisfied, from the testimony, of the guilt of the prisoner, beyond a reasonable doubt so arising, they must convict."

"A reasonable doubt is not probability only, or conjecture, or supposition ; the doubt which should properly induce a jury to withhold a verdict of guilty should be such a doubt as would reasonably arise from the testimony before them."

It is possible that there has been a clerical mistake in copying this instruction into the record, by which the word "probability" is substituted for the words "mere possibility," which are contained in the instruction granted in Cicely's case, and held to be correct. However, as the charge stands in the record, it is clearly erroneous.

Where the probabilities are in favor of a party on trial, the jury may nevertheless entertain a doubt of his innocence. But where, in the estimation of the jury, the probability arising from the evidence, is in favor of the innocence of the accused, it is impossible for them not to doubt as to his guilt. If the jury entertained a well founded doubt of the prisoner's guilt, arising from the testimony, the law made it their duty to acquit. The instruction, if it means any thing, reverses this rule. The jury were instructed that "probability only" was not what is meant in law by a reasonable doubt. In effect, that a probability of the prisoner's innocence, arising upon the testimony, was not a legal foundation for a reasonable doubt of his guilt. The instruction imposed upon the jury the obligation to convict, although the evidence might preponderate in favor of the accused.

In regard to the ninth instruction requested by the prisoner, we perceive no error in the refusal of the court to grant it.

It is true, that this charge is a literal transcript of language used by a learned writer in expounding the doctrines of circumstantial evidence. It is manifest, that the proposition contained in the charge was not announced by the author, from whom it

was copied, as a distinct principle of law. It was intended as an illustration of the weight which should be given to circumstantial evidence in determining the question in any given case whether such evidence was sufficient to exclude from the mind of the judge or jury all doubt of the guilt of the party sought to be affected by it. The instruction presents an extremely abstract proposition, and was much more likely to confuse the jury than to enlighten them upon the questions under consideration. This was a sufficient reason for withholding the instruction ; especially as the jury had been, at the instance of the prisoner, fully instructed as to the character and weight of circumstantial evidence.

As we reverse the judgment for the errors above noticed, and remand the prisoner for a new trial, it is deemed improper to examine the exception taken to the judgment, on the motion for a new trial.

Judgment reversed, *venire de novo* awarded, and cause remanded.