### BRUCE *v.* STATE.*

(Division B. March 9, 1925.)

[103 So. 133.  No. 24542.]

HOMICIDE.  *Evidence held insufficient to sustain conviction of defendant as accessory on theory that he aided and abetted in killing.*

Evidence *held* insufficient to sustain conviction of defendant as accessory on theory that he aided and abetted in the killing committed by his son, where the most that could reasonably be inferred from evidence was that he was present and approved the act.

---

*Headnote 1. Criminal Law, 16 C. J., section 121; Homicide, 30 C. J., section 548.

APPEAL from circuit court of Franklin county.

HON. R. L. CORBAN, Judge.

John Bruce was convicted of murder, and he appeals.

Judgment reversed, and defendant discharged.

*J. B. Webb* and *V. H. Torrey,* for appellant.

No attempt was made to show that John Bruce, the father, had, at any time, had hostile feelings towards deceased, or ever had, or intended to have any altercation with him on any account. It is shown, it will be admitted, that he knew of the state of feeling between his son and deceased, but it is also in evidence—and this is

undisputed—that on the day preceding and the day of the homicide, he advised his son to "drop it," and to have nothing more to do with Bolling.

As the dummy drew into a log station, a regular place to discharge and take on workmen, or other passengers, Curtis Bruce jumped from the flat-car on which he and others were riding, and almost immediately struck deceased Bolling with his stick of wedge wood, from the effect of which Bolling died. John Bruce, too, got off the car at this point, but not until after his son had so struck and killed Bolling. As soon as he touched the ground, a brother of deceased, a young man, assaulted and beat the older Bruce unmercifully, ceasing only when Curtis, seeing his father in such plight, struck the assailant of his father twice on the head, with the same piece of wedge wood, knocking him from the prostrate body of his father. At this point the difficulty ceased. The wounded Bolling was conveyed to a hospital where he later died; the crowd dispersed and the Bruces were arrested and placed in jail where—denied bail on two applications—they remained until trial court convened.

From the state's examination of the witnesses it is impossible to say whether it proceeded on the theory that John Bruce procured or counseled the killing, and was, therefore, accessory before the fact, or that, being present at the killing, he was, therefore, a principal, in that his mere presence constituted aiding or abetting, or that both these theories were employed, in order that each might supply any deficiency in the other.

But there was no controversy or disagreement or contention anywhere in the evidence—that there had been a conspiracy, prearrangement or agreement between the Bruces, looking to the killing of Bolling, or of doing him any great bodily harm; and no counseling or procuring by the elder, touching the killing; and no evidence showing or tending to show, that John Bruce, beyond being present at the scene, did anything whatever by word, act or deed, or in "any other way" to aid or abet his son in such killing.

Under our authorities the record here shows that, in respect to this homicide, appellant, John Bruce, is guilty of no crime whatever, and that Curtis Bruce alone would be guilty of anything on the facts. *Browning* v. *State*, 30 Miss. 656; *Harper* v. *State*, 83 Miss. 402.

*F. S. Harmon*, Assistant Attorney-General, for the state.

It thus appears from the testimony that the appellant and his son were on the lookout for the Bollings and lost no time in commencing the fatal attack.

Since this appellant was convicted on the theory that he was present, aiding and abetting at the moment when his son struck the fatal blow, and that the fight was premeditated and prearranged by the appellant and his son, it become of first importance to notice carefully all the evidence tending to show a conspiracy on the part of the appellant and his son. Attention has been called to the fact that the father, appellant here, was on this train for the second consecutive morning, was not an employee of the company and although the witnesses for the defense state that he had failed to find work in the woods on the preceding day, the testimony of Cotton shows that the father, appellant here, was carrying a piece of wedge wood eighteen or twenty inches long in his hand, and that the son had a similar stick in his hand, though it is quite certain from this record that since the father was not engaged in logging operations he had no legitimate use for said wedge wood.

Witness Cotton shows that the two men got up and looked ahead to the spot where the Bolling brothers were due to get on the train, and that Curtis Bruce jumped off while the train was still in motion, followed immediately by his father, the appellant here, and that neither of them said a word, but that Curtis took two or three steps and raising the wedge wood club in his hand, struck Pearlie Bolling on the side of the head when the deceased was

not even looking, and felling him instantly to the ground, fracturing his skull and causing the formation of a blood clot from which the victim died that night without ever regaining consciousness.

Eyewitnesses testifying for the state, swore that Curtis Bruce jumped off of the train while the train was still in motion, followed immediately by his father, each armed with a heavy club, and that they rushed toward the Bolling brothers who, according to the witnesses for the state, made no hostile move whatever.

It is submitted that this testimony as to the action of the two men, the appellant and his son, indicates that they were engaged in a joint undertaking. Nor is this changed by the fact that the appellant here did not strike at the deceased, but at his brother Homer, nor is this material so long as the attack was part of a pre-arranged plan, since under these circumstances the father, appellant here, is responsible for the fatal blow struck by his son.

The court's attention is now called to damaging statements made by the appellant and his son in the presence of each other immediately preceding and immediately following the fatal encounter. The statements made by the father and son in the presence of each other and in the hearing of each other immediately before the encounter and immediately thereafter before their blood had had time to cool, indicate quite plainly that this appellant who was not an employee of the Homochitto Lummer Company and had no business riding on the train furnished solely to employees, but accompanied his son in order to carry out his expressed intentions of killing both of the Bolling boys that morning.

Counsel for the appellant declares that the record here shows that the appellant, John Bruce, is guilty of no crime whatever, and that the son Curtis alone is guilty. Compare the facts of the following cases: *Peden* v. *State* (1883), 61 Miss. 267; *Bell* v. *Morrison* (1854), 27 Miss. 68; *Meek* v. *Perry*, 36 Miss. 190; *Locklear* v. *State*, 87 So. (Ala.) 708; *Williams* v. *State*, 93 So. (Ala.) 284.

138 Miss.—25,

It seems clear in this case that the evidence was clearly admissible, and that it showed that this killing was the result of a premeditated design to commit an unlawful act, which unlawful act, according to the defendant's own statement was "to kill both of the Bolling boys," and according to the statements of the son made in the defendant's presence, was to assault them and beat them up—an unlawful act—for the consequences of which this appellant is as much responsible in the eye of the law as his son who struck the blow.

Argued orally by *J. B. Webb*, for appellant, and *Francis Harmon*, Assistant Attorney-General, for the state.

HOLDEN, P. J., delivered the opinion of the court.

John Bruce appeals from a conviction of murder and sentence to life imprisonment. Curtis Bruce, the son of John Bruce, struck Pearlie Bolling on the head with a piece of timber called a "wedge wood," from which blow Pearlie Bolling died. For this offense Curtis Bruce was indicted for murder, and he pleaded guilty and received a sentence of life imprisonment. John Bruce, the appellant herein, was jointly indicted with his son, Curtis Bruce, as an accessory, and was convicted upon the theory that he aided and abetted in the killing.

The main point presented for reversal is that the evidence offered by the state was insufficient to show that John Bruce participated in the homicide, either by way of conspiracy to commit the act, or by being present and aiding, encouraging, or abetting in the killing. We have read and carefully considered all of the testimony introduced in the case, and it is our conclusion that the evidence is insufficient to support the verdict.

We will not take the time nor space to set out in detail the evidence in the record relied upon by the state for the conviction, but shall be content in saying that the proof fails to show that John Bruce conspired with his son Curtis Bruce to kill the deceased Bolling, and

while John Bruce was present at the time when his son Curtis Bruce struck the fatal blow, yet the testimony fails to show that John Bruce aided, abetted, or encouraged the killing by word or act or deed. On the contrary, the testimony of the eyewitnesses introduced by the state was conclusive that John Bruce took no part whatever in the killing, but was still sitting upon the railroad car at the time his son, Curtis Bruce, approached and struck the deceased with the ''wedge wood.''

The most that could reasonably be inferred from the proof in this record is that John Bruce, the father, was present and approved the act. But mere approval is not sufficient to connect a person as a participant in the killing done by another. The case comes clearly within the rule announced in *Harper* v. *State,* 83 Miss. 402, 35 So. 572. See, also, *Browning* v. *State,* 30 Miss. 656, and 16 C. J. p. 132.

Curtis Bruce, a young man, had had some previous difficulty with deceased, Pearlie Bolling, who also was a young man, and the record shows they had threatened to whip each other on account of previous trouble between them, and when they met on the morning of the killing, young Bruce directly approached young Bolling and without warning struck him one lick on the head, which proved to be a fatal blow. There was no ill feeling between John Bruce and the deceased. The weapon used is described in the brief of the attorney-general as follows:

''This 'wedge wood,' made from dried persimmon cut about an inch thick and the width of the hand, from twelve to twenty inches in length, was used by these loggers as an aid to their sawing operations and as a means of felling the trees in the desired direction.''

It seems very probable that Curtis Bruce did not think nor intend that the lick given by him would kill the deceased. However, it is unnecessary to discuss the question of whether the killing was murder or manslaughter on the part of Curtis Bruce, because, as we have stated

above, the appellant, John Bruce, the father of Curtis Bruce, did not participate in the killing.

It appears that these sawyers or loggers commonly carried "wedge woods" in that 'locality, and it was not unusual for John Bruce and his son Curtis, who were sawyers and loggers, going to their work, to have in their hands "wedge woods" on this occasion when Curtis Bruce struck and killed the deceased Bolling. From the conclusions reached above we are led to hold that the proof in the case does not warrant the conviction of the appellant, John Bruce, on the charge of murder. Therefore the judgment of the lower court will be reversed, and the appellant discharged.

*Reversed, and appellant discharged.*