SANDERS *v.* STATE.

(In Banc.   Feb. 9, 1942.)

[6 So. (2d) 125.   No. 34634.]

R. O. Arrington, of Hazlehurst, for appellant.

**Greek L. Rice,** Attorney-General, by **Geo. H. Ethridge,** Assistant Attorney-General, for appellee.

Roberds, J., delivered the opinion of the court.

Appellant was convicted of unlawful possession of intoxicating liquors. On this appeal, he contends (1) that the evidence was insufficient to sustain the conviction; and (2) that the granting to the state of a certain instruction was reversible error. We think his first contention is well taken and, therefore, do not pass upon the second.

Appellant and one Charlie Lee, negroes, lived in Hazlehurst. Charlie invited appellant, called L. S., to ride with him to and from Vicksburg, some 60 miles from Hazlehurst. L. S. accepted. It seems that L. S., although a married man, had a girl friend named Mildred, who, in some way not explained in the testimony, learned of the contemplated trip, although it does not tax the imagination to the danger point to surmise how she learned it. She requested permission of Charlie to go, which was granted. The three proceeded from Hazlehurst around eight o'clock at night for Vicksburg in a Chevrolet pick-up truck belonging to Charlie's father. On arriving at Vicksburg, Charlie left L. S. and Mildred at the Kitty Kat, where, according to the window signs, one might obtain, for very low prices, delicious viands suitable to entirely satisfy the hunger of inner man. So far as the record shows, L. S. and Mildred remained at the Kitty Kat until Charlie reappeared to pick them up in the pick-up. It might be said here that neither L. S. nor Mildred knew the object of Charlie's trip, nor the mission of his absence from the Kitty Kat. They were entirely satisfied that he had left them alone. However, when Charlie returned he had some 13 or 14 cases of Paul Jones and Hiram Walker whisky in the truck. They started back to Hazlehurst, the three on the seat in the cab, and the whisky in the back on the floor of the truck, Charlie driving. It so happened that two gentlemen, deputies

of the sheriff of Lincoln County, were "cruising" about this time, which was around one o'clock in the morning.

Counsel for defendant seemed inclined to intimate in the court below that "cruising," on this occasion, had a little different meaning from its generally understood meaning in that country, but we do not think the intimation is sufficiently relevant to the issues here for us to adjudicate the question. Be that as it may, as these two deputies were about to come into the Vicksburg-Hazlehurst road, a truck passed along that road at a speed of some fifty miles per hour, which the officers thought was reckless driving, and they proceeded to overtake and stop the truck. It was the Charlie Lee truck. We pass the events at this point to be later detailed, since the state says these events should convict appellant. One of the officers got into the truck with Charlie Lee and the other put Mildred and L. S. in the car of the officers, and all proceeded to Hazlehurst. On the way, L. S. made a proposition to the deputy who had him in charge, which the state also says should sustain his conviction. We will detail that later. Charlie Lee was charged with having control and possession of this whisky; admitted his guilt and at the time of the trial had paid $80 on a fine of $400, although there was some confusion as to the docket entries of the court.

The state says the conviction should stand because (1) appellant knew the whisky was in the truck; and (2) that his conduct when apprehended and his proposition later made to the officer prove him to be guilty. We will discuss these in order.

The proof is uncontradicted that appellant did not know the object of this trip to Vicksburg. It appears clear that it was an opportunity, seized at the right moment, to be with his girl friend out of the vision of his far-seeing and ever-watchful spouse, who, no doubt, had brought her faculties to great perfection in that respect in her effort to keep L. S. within her range. The truck belonged to Charlie's father. L. S. did not drive it. He had

nothing whatever to do with the whisky. It was not under his control. He was not aiding in its transportation. The case of Clark v. State, 154 Miss. 457, 122 So. 534, is more similar on its facts to the case at bar than any we have found, but in that case appellant was driving the automobile; saw the officers, speeded the car and attempted to escape. The purchaser of the whisky, seeing the officers in pursuit, handed the bottle to one Thomas, who broke it. There was proof also that all three were "in cahoots," which the court understood to mean they were jointly interested in the property and common participants in the enterprise. The facts were sufficient to sustain a conviction of Clark, but it is at once seen that they are quite different from the facts of the case at bar. The most that can be said in this regard in this case is that appellant was an invitee who knew his invitor was transporting whisky, and this knowledge first came to him upon the return journey. In Bruce v. State, 138 Miss. 382, 387, 103 So. 133, this court said: "The most that could reasonably be inferred from the proof in this record is that John Bruce, the father, was present and approved the act. But mere approval is not sufficient to connect a person as a participant in the killing done by another." See Burnett et al. v. State, 192 Miss. 44, 4 So. (2d) 541.

But the state says appellant's conduct, when the truck was stopped, shows he tried to flee. We do not think the testimony proves that. One officer said when they stopped the truck and got out of their car: ". . . L. S., and this girl jumped out and started to the back of the truck and I went around to stop them and John went to the cab of the truck and Charlie Lee was driving . . ." In another place, he said:

"Q. Did they resist arrest? A. Not a bit.

"Q. Did they have any kind of weapon? A. No.

"Q. They were just as nice as any other person? A. They were just as nice as they could be."

This is not sufficient to show an attempt at flight, but,

if it is, the main cause of the attempt, as shown by the incidents we now relate, was not appellant's possession of whisky, but his possession of Mildred.

On the way to Hazlehurst, L. S. asked the officer if he would not let Mildred go when they got there. He said "he didn't want his wife to know it." He then suggested he would pay as much as $200 if the officer would let her go. There is a strained effort to interpret this proposition as including himself as well as Mildred. We think the evidence does not bear out that interpretation, but if it does, it is clear the motive prompting it was not a sense of guilt from possessing whisky, but fear of punishment from an outraged wife when the knowledge came to her through the notoriety resulting from Mildred's presence on this occasion.

But the legal aspects of this proposition were submerged in the court below in the domestic contest between the advocates, on the one side, of the wisdom of keeping from the wife knowledge of such matters as this, even at a cost of as much as two hundred dollars, and, on the other side, of making a full breast of the entire happenings, in the hope and belief that the ever-faithful and loving wife would fully forgive and forget. The deputy sheriff was an advocate of the first theory. When the proposition was made to him he said he "would ask the sheriff about it when we got to town and if he was willing it would be all right with me." He was then asked: 'Isn't it worth $200.00 for your wife not to catch you?" He replied: "I think so. I think it would be worth more than that to me." Counsel for the defendant was a strong advocate of the same theory. It was the official duty of the prosecuting attorney to advocate the tell-all--and-hope-for-forgiveness policy, and he did make a manful effort to do his duty, but one cannot but feel the silent reflection by the record that if relieved of the pressure of official duty, he would enthusiastically support the tell-nothing doctrine, regardless of cost. The

circuit judge discreetly kept silent on the subject and left the question open.

The contest has continued on this appeal. Counsel for appellant, ever consistent, strongly advocates the wisdom of his policy, but the learned assistant attorney-general, who was formerly a member of this court, just as strongly advocates the tell-all theory, and he pleads in eloquent words. Says he: ". . . from this view (that of counsel for appellant), I must dissent, perhaps from force of habit, for in my view it is necessary for the salvation of married men that their wives know much, maintain a watchful eye and a militant tongue, with discreet forgiveness in which case a man, when finally forgiven, feels that satisfaction of mind and exultation of spirit which comes to a sinner when he realizes that his sins have been fully and finally forgiven." It is true counsel for appellant intimates that the assistant attorney-general was not pleading so much to this court as to some one else, but, whatever be his purpose, we must admit he did a good job. Neither advocate cites authority for his position, and the writer having no personal knowledge on the subject, the question must remain unadjudicated.

And, now resurrecting the legal aspects, we hold that this proposition by appellant was not sufficient evidence to convict him of the crime of possessing this whisky.

Reversed and appellant discharged.